UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| G.S., <br><br> Plaintiff, <br><br> v. <br><br> WESTFIELD PUBLIC SCHOOLS and the BUREAU OF SPECIAL EDUCATION APPEALS, <br><br> Defendant. | Civil Action No. 3:22-cv-10267-IT |

MEMORANDUM & ORDER

February 1, 2024

TALWANI, D.J.

Before the court is Westfield Public Schools' ("Westfield") Motion to Alter or Amend Judgment [Doc. No. 55]. Westfield contends that the court erred in finding that the Bureau of Special Education Appeals ("BSEA") lacks jurisdiction over "the Department of Mental Health." Westfield also takes issue with several of the court's factual findings. For the reasons set forth herein, Westfield's Motion is GRANTED in part and DENIED in part.

I.   **Standard of Review**

Rule 59(e) of the Federal Rules of Civil Procedure grants the court the authority to alter or amend its judgment. But motions for reconsideration are not vehicles for advancing arguments that could have been asserted earlier or for "rearguing theories previously advanced and rejected." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). Rather, the granting of such a motion is "an extraordinary remedy which should be used sparingly" and in limited circumstances. Id. Specifically, reconsideration is warranted "only where the movant shows a manifest error of law or newly discovered evidence." Kansky v. Coca-Cola Bottling Co. of New

Eng., 492 F.3d 54, 60 (1st Cir. 2007). The movant must demonstrate more than merely an error in reasoning. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and that might reasonably be expected to alter the conclusion reached by court." Est. of Rivera v. Dr. Susoni Hosp., Inc., 323 F. Supp. 2d 262, 265 (D.P.R. 2004) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

**II.     Discussion**

    A.     *Factual Disputes*

Westfield is correct that the parties did not agree to place G.S. in an "integrated residential setting." Instead, the parties agreed that NEARI—the day school G.S. was attending—was not meeting G.S.'s needs at the time of the IEP meeting(s), and that G.S. required a school placement that could provide a comprehensive "behavioral approach" to his needs. The court will amend the judgment to reflect the more accurate statement. However, Westfield's assertion that the record does not support the court's conclusion that G.S.'s lower independent living skills were considered as part of his ability (or not) to successfully transition is incorrect. See AR01597 (Q: "[W]as part of the concern his immaturity and lack of independent living skills?" A: "Yeah, that was a factor. That was a factor, yes."); AR01599 ("No one that I have worked with has had quite a long transition period."). That part of the court's Order will remain unaltered.

    B.     *Cutchins-Provided Services*

Westfield's primary objection, see Westfield's Motion 2 [Doc. No. 55], is directed at the court's conclusion that the Hearing Officer "did not have authority to require Cutchins to provide any additional services for Plaintiff," Memorandum and Order 18 [Doc. No. 51].

Westfield is correct that BSEA Hearing Officers are permitted to order the provision of services provided by certain agencies, including the Department of Mental Health, "*in addition to* the program and related services to be provided by the school committee." Mass. Gen. Laws ch. 71B, § 3 (emphasis added). However, the Hearing Officer's authority to order services from other agencies is "limited to those services *over and above* the special education and related services that are the responsibility of the school district." In re Worcester Public Schools, No. 09-3109, Decision, at 31 n.29 (Bureau Special Educ. App. Feb. 24, 2009) (emphasis added). Moreover, the school district "bears responsibility to ensure that [additional] services are delivered appropriately and effectively." Id. at 31. And where another state agency has been providing services, the school district may "continue to rely upon [those] services"—but only "provided that these services can be adjusted to be appropriate and effective." Id.

Here, the parties were in agreement that the school district placement at NEARI was not meeting G.S.'s needs. Dr. Pickar particularly recommended that G.S. be transferred to a program with an "emphasis on functional living, academic and vocational skills." AR 01124. Cutchins—a program affiliated with the Department of Mental Health—does not provide those services.[1] Martino Letter [Doc. No. 36-1]; Hrg. Tr. 28:16-17, 29:14-15, 31:20–32:2, 35:7-10 (Aug. 18, 2023). To start, "academic and vocational skills" are the types of services that would seem to be squarely within the sort that should and could be provided by the school district, not by a

---

[1] The court repeatedly questioned the parties regarding the relationship between services provided by Cutchins and the responsibilities of the school district. The parties—including the attorney representing BSEA—did not disabuse the court of its understanding that the services at issue in this case were "not the obligation" of Cutchins. See Hrg. Tr. 32:1-3 (exchange with Attorney Engel); 40:18-24 (exchange with Attorney Batchelor); 43:1-16 (exchange with Attorney Vasudevan); 46:2-6 (summary of court's understanding on the issue).

different state agency.² See In re Worcester Public Schools, No. 09-3019, at 31 n.29, 32 n.30 (first inquiry is whether service is "required for educational reasons"). The Hearing Officer did not engage in that inquiry. Instead, she focused on Cutchins as the purveyor of G.S.'s meaningful support services, BSEA Decision 16-17 [Doc. No. 1-3], and erroneously ordered Cutchins to provide services it does not offer, id. at 18 ("[I]n light of Ms. Martino's concern that the Cutchins program may not be addressing all areas of Student's need, the Treatment Team should specifically review this at their next meeting.") These errors exceeded the scope of the Hearing Officer's authority in this case, where the district is permitted to rely on other Departments to provide necessary services only where they have been found to meet the student's additional needs. No such finding was made here. See BSEA Decision 11 [Doc. No. 1-3] (GS "has other needs in areas in which [Cutchins] do[es] not specialize," that are "not the specific focus of their program," and that "are not addressed in a clinical way" by Cutchins) (citing Martino Letter); id. at 18 (directing further review of Cutchins' ability to "address[] all areas of Student's need[s]").

      In sum, the court will amend its Order to clarify that BSEA Hearing Officers do in fact maintain authority to order the provision of services from other agencies as a general matter, but leaves intact the finding that in these specific circumstances, the Hearing Officer "did not have authority to require Cutchins to provide any additional services for Plaintiff."

---

² Westfield also notes that the court incorrectly described Cutchins as not part of the Department of Elementary and Secondary Education. The court will amend the Order to correct the error, but notes that the error is immaterial where the salient point is that Cutchins and the services it provides are not directly controlled by Westfield.

## III.  Conclusion

For the foregoing reasons, Westfield's Motion [Doc. No. 55] is GRANTED in part and DENIED in part.

IT IS SO ORDERED

February 1, 2024                                        /s/      Indira Talwani
                                                        United States District Judge